# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

**CRIMINAL ACTION NO. 17-55-DCR**
**(Civil Action No. 21-305)**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**


**V.**            **RESPONSE OF UNITED STATES IN OPPOSTIION**
**TO BUCIO'S MOTION TO VACATE**


**SERGIO BUCIO**                                        **DEFENDANT**

\* \* \* \* \*

This Court should deny Bucio's 28 U.S.C. § 2255 motion because he is unable to show that he received ineffective assistance of counsel.

In order to prevail on an ineffective assistance of counsel claim, Bucio bears the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A § 2255 petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel. If the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697. A petitioner bears the burden of proving his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To show deficient performance, a defendant "must prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts "employ a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. (quoting *Strickland*, 466 U.S. at 689).

To prove prejudice, a defendant "must demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different.'" *Dado*, 759 F.3d at 563 (alteration in original) (quoting *Strickland*, 466 U.S. at 694). "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *United States v. Munoz*, 605 F.3d 359, 377 (6th Cir. 2010) (alteration in original) (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir. 2006)). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Dado*, 759 F.3d at 563 (quoting *Strickland*, 466 U.S. at 694). Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691).

In 2016, federal agents began investigating an organization affiliated with a Mexican drug cartel that was trafficking large quantities of heroin, fentanyl, cocaine, and crystal methamphetamine in Kentucky. [R. 536: Troey Stout, TR (Sentencing) at

2

3427-29, 3436-37.]  The leader of the organization, Ciro Macias-Martinez, had

a "problem"—"he had too much cash."  *United States v. Bucio*, 857 F. App'x 217, 217

(6th Cir. 2021), *cert. denied*, 142 S. Ct. 365 (2021).  Macias-Martinez "had no way to

launder his growing piles of currency or to repatriate the funds to Mexico . . .  Enter

Sergio Bucio."  *Id*.  Bucio "arrived in the Bluegrass State in late August 2016 to redesign

Macias-Martinez's money-laundering operation, which enabled Macias-Martinez, his

wife, and their network of coconspirators to launder more than $2 million in drug

money."  *Id*.  "But the seemingly well-oiled machine turned out to have some unreliable

parts: the couriers who received many of their bulk cash drops were undercover federal

agents.  Numerous arrests followed, and Bucio was charged with two counts of

conspiracy to commit money laundering."  *Id*.  "He pleaded guilty to both counts and was

sentenced to 109 months' incarceration."  *Id*.  On appeal, he challenged the amount of

laundered funds attributed to him and he argued that he was entitled to a mitigating role

reduction.  The Sixth Circuit affirmed.  *Id*. at 217-21.

Now, Bucio seeks to vacate his sentence pursuant to 28 U.S.C. § 2255 by claiming

that his counsel provided ineffective assistance.  [R. 551:  Motion at 3611.]  Bucio claims

that his counsel failed to advise him of any plea negotiations or present him with the

proposed "plea document."  [R. 551:  Motion at 3614, 3630-31.]  Defense counsel has

a duty to communicate plea offers to their client.  *Missouri v. Frye*, 566 U.S. 134, 145

(2012).  This duty extends to include consulting with the "defendant on important

decisions" and keeping the defendant "informed of important developments in the course

3

of prosecution." *United States v. Price*, No. 16-20437, 2020 WL 6286302, at *3 (E.D. Mich. Oct. 27, 2020).

Bucio cannot show that his counsel acted in violation of his duty to disclose. Counsel "promptly notified Mr. Bucio of all plea offers extended by the government, reviewed the proposed plea agreements . . . and explained each in detail." [Affidavit of Jarrod Beck at ¶ 28.]  Counsel recalls that on November 7, 2019, the government provided the first proposed plea agreement.  [*Id*. at ¶ 6.]  On November 14, counsel met with Bucio and "discussed the government's proposed plea agreement . . . including the government's loss calculation including all funds laundered during the conspiracy."  The proposed plea also included a four-level aggravating role enhancement.  Counsel and Bucio ultimately "agreed that the terms of the proposed plea agreement were not to [Bucio's] benefit," and counsel informed the government of their position.  [*Id*. at ¶ 7.]

On November 20, after further negotiations, counsel provided the government with "a proposed statement of facts for a potential plea."  At that time, counsel "advocated for a limited loss calculation because Mr. Bucio effectively withdrew from the conspiracy after participating in only one cash transfer and one structured deposits trip."  Counsel further argued against an aggravated role enhancement.  [*Id*. at ¶ 8.]  On December 3, the government provided a second proposed plea agreement, but the plea still contained an aggravated role enhancement and held Buico responsible for the total amount of funds laundered during the entire conspiracy.  [*Id*. at ¶ 9; *see id*. at Exhibit 2 (December 3, 2019, proposed plea agreement).]  On December 4, counsel met with

4

Bucio.  Counsel "explained the government's revised proposed plea agreement, the statement of facts, the loss calculation, and the leadership enhancement."  They "discussed the benefits and potential pitfalls of proceeding to trial, resolving the case by way of the government's proposed plea agreement, or entering an open plea to preserve our sentencing arguments and appellate rights."  [*Id*. at ¶ 10.]  "Mr. Bucio ultimately decided to enter a guilty plea without a plea agreement."  [*Id*.]  Counsel met with Bucio again prior to the entry of the plea.  Counsel and Bucio "discussed the evidence," and counsel "reiterated that [they] were not agreeing to the loss amount or the aggravating role adjustment."  Counsel explained that they were "preserving the ability to object" to those issues and "ensure[] that Mr. Bucio received full credit for acceptance of responsibility.  Mr. Bucio indicated he understood and again approved of this approach." [*Id*. at ¶ 11.]

On December 13, the government provided a third revised proposed plea offer. The proposed terms removed the role enhancement but retained the provision that Bucio was accountable for all funds laundered during the entire duration of the conspiracy.  [*Id*. at ¶ 12.]  On December 16, counsel met with Bucio to explain the most recent offer. "Bucio reiterated that he did not agree his relevant conduct should include all of the funds laundered by Mr. Macias and others after he departed Kentucky.  As such, Mr. Bucio chose to proceed as originally planned by entering a guilty plea without a plea agreement."  [*Id*. at ¶ 13.]

5

Here, counsel's affidavit shows not only that Bucio was apprised of the developments in the plea negotiating stage, but also that it was Bucio's decision to enter a plea of guilty without a written plea agreement. Bucio's repeated insistence that, but for counsel's deficient performance, he would have "sought the most favorable plea offer," [R. 551: Motion at 3614-15, 3617-18, 3624, 3630-32], is disingenuous. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. Bucio's insistence during plea negotiations that the loss amount be limited shows he was unwilling to enter into a plea providing otherwise. [*See* Beck Affidavit at ¶¶ 10-13.] Moreover, Bucio's desire to preserve his appeal rights also drove his decision to enter an open plea. [*Id*. at ¶¶ 10-11; *see id*. at Exhibit 1 (¶ 7) (first proposed plea agreement); Exhibit 2 (¶ 7) (second proposed plea agreement), Exhibit 3 (¶ 7) (third proposed plea agreement) (all waiving right to appeal guilty plea, conviction, and any sentence within the guideline range).] And Bucio's related bare bones claim that he would have proceeded to trial, [R. 551: Motion at 3614-15, 3617-18, 3624, 3630-32], without more, is insufficient to show that he would not have entered a plea. *See Kimball v. Mills*, No. 1:08-CV-124, 2011 WL 4344234, at *9 (E.D. Tenn. Sept. 14, 2011) (noting that "mere allegation from a petitioner that he would have gone to trial had counsel's advice been different is insufficient to establish a reasonable probability that he would have actually done so").

6

Bucio also claims that his counsel failed to secure an interpreter "after being notified that an interpreter would be necessary." [R. 551: Motion at 3614-18, 3623 (¶ 2), 3625 (¶ 12), 3630-31.] Bucio alleges that counsel "persisted in moving forward with several visits with Petitioner Bucio to discuss the case to which Petitioner Bucio did not understand," and Bucio asserts that "[t]he records and files to all the Counsel visits will show that Counsel [] in certain occasions failed to provide or procure an interpreter." [*Id*. at 3630.] Counsel, however, contradicts these claims. Counsel explains that he "was informed Mr. Bucio was a native Spanish speaker at the outset of the case." [Beck Affidavit at ¶ 2.] Counsel sought the services of two Spanish interpreters "who regularly assist with criminal cases in the Eastern District of Kentucky," Dr. Marta Roller and Roberto Hernandez. [*Id*. at ¶ 3.] Mr. Hernandez was present during counsel's "initial meeting with Mr. Bucio on September 13, 2019." [*Id*.] Mr. Hernandez also participated at Mr. Bucio's arraignment and a hearing on the government's motion to revoke a release order." [*Id*.] On September 17, 2019, counsel again met with Bucio and Maria E. Conde-Barwise, "a federally certified court interpreter," provided her services. Ms. Conde-Barwise "was present during the two-hour meeting at [the jail] where" counsel and Bucio discussed the nature of the money laundering allegations, and the status of the case." [*Id*. at ¶ 4.] On November 1, 2019, counsel again met with Bucio with "[c]ertified court interpreter Alejando Gualino" present. At that meeting, counsel and Bucio "reviewed evidence of [Bucio's] involvement in a cash transfer to an undercover DEA agent," and "witness statements and other evidence confirming [Bucio's] involvement in

7

a single trip with several co-conspirators to banks in Tennessee for the purpose of making cash deposits."  [*Id*. at ¶ 5.]

Counsel further detailed seven other times that the services of an interpreter were utilized to ensure Bucio's understanding of the proceedings.  [*Id*. at ¶ 7 (meeting to discuss initial proposed plea agreement), ¶ 10 (meeting to discuss second proposed plea agreement), ¶ 11 (teleconference to discuss evidence and loss amount), ¶ 13 (meeting to discuss third revised proposed plea agreement), ¶ 14 (interview with probation office to prepare presentence report), ¶ 17 (teleconference to review presentence report), ¶ 24 (teleconference to discuss sentencing matters).]  Simply put, counsel "procured interpreters for all meetings and teleconferences where [there were] substantive discussions about the case."  [Beck Affidavit at ¶ 28.]

Bucio relatedly claims that the alleged lack of an interpreter caused him to enter a "plea of guilty with omitted information, misunderstood information, and without the awareness and understanding of the full version of the facts," thus rendering his plea "null and void."  [R. 551:  Motion at 3615; *see id*. at 3614, 3618, 3624-25, 3630-33.] Bucio, however, fails to detail what omitted or misunderstood information he was lacking at the time he entered his plea.  [*See id*.]  Counsel met with Bucio several times prior to the entry of the plea to discuss his case, and with an interpreter present.  [*See* Beck Affidavit at ¶¶ 4-5, 7, 10-11, 13.]  Counsel confirms that he "apprised Mr. Bucio of the underlying facts, and . . . reviewed and discussed the evidence."  [*Id*. at ¶ 28.] Moreover, Bucio confessed his criminal conduct during his change-of-plea hearing.

8

[R. 537:  Colloquy, TR (Rearraignment) at 3545-47.]  And he admitted that the government would be able to prove the elements of his offense beyond a reasonable doubt.  [*Id*. at 3548.]  Bucio's claim that he was not "properly informed," [R. 551:  Motion at 3631], is unpersuasive.

Bucio's allegation that his counsel's deficient performance rendered his guilty plea unknowing and involuntary, [*id*. at 3618, 3631-32], fares no better.  Bucio's complaints that counsel failed to explain "the elements to the charges, the Sentencing Guidelines and Petitioner's Level," [*id*. at 3632], are unfounded.  Counsel reviewed the elements of the charges, the sentencing guidelines, and possible enhancements with Bucio.  [Beck Affidavit at ¶¶ 4, 7-13 (discussing loss calculation, aggravating role adjustments, and relevant conduct); R. 537:  Jarrod Beck, TR (Rearraignment) at 3536 (informing Court that they had reviewed the charges "in detail multiple times").]  And at the rearraignment hearing, this Court reviewed the elements of each offense with Bucio.  [R. 537:  Court, TR (Sentencing) at 3547-48.]  While Bucio contends that his counsel promised him that his guilty plea would "yield a five-year sentence," [R. 551:  Motion at 3614, 3616, 3625], counsel counters that at no time did counsel "indicate Mr. Bucio's plea would yield a five-year sentence.  Instead, I explained Mr. Bucio's options and advised him abut possible outcomes."  [Beck Affidavit at ¶ 29.]  Thus, Bucio's allegations are baseless.

Regardless, Federal Rule of Criminal Procedure 11 governs plea colloquies and is meant to ensure that the district court is satisfied that a guilty plea is made knowingly,

voluntarily, and intelligently.  *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged."  *Id.* at 378-79.  When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry."  *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990).

During the guilty plea proceeding, this Court first questioned Bucio to establish his competency to plead guilty.  [R. 537:  Colloquy, TR (Rearraignment) at 3533-37.] Specifically, the Court asked Bucio if anyone had given him any promises in exchange for his plea, and Bucio responded, "No."  [*Id*. at 3538.]  The Court then reviewed the possible penalties and advised Bucio of the rights he was giving up by pleading guilty. [*Id*. at 3538-42.]  The Court then explained the elements of each offense, and the government summarized the evidence.  [*Id*. at 3542-49.]  Bucio then admitted his crimes. [*Id*. at 3549.]  The Court found that Bucio was "competent and capable of entering an informed plea," and concluded that his guilty plea was "knowing and voluntary."  [*Id*.] Thus, "[t]he change-of-plea colloquy here included all the elements needed to establish a voluntary and knowing plea."  *United States v. Powell*, 798 F.3d 431, 434 (6th Cir. 2015) (reviewing colloquy).

Bucio's assertion that his counsel failed to explain the presentence report with him or explain any objections, [R. 551:  Motion at 3614, 3616, 3618, 3630-33,] is unavailing.

10

Counsel explains that after deciding to enter an open plea, Bucio "instructed [counsel] to object if the loss calculation exceeded what he believed was appropriate," and to "object to the leadership enhancement if applied." [Beck Affidavit at ¶ 10.] In advance of the objections, counsel provided the probation officer with witness statements and trial transcripts to confirm that Bucio was only involved at the outset of the scheme and did not play a significant role in the offense. [*Id.* at ¶ 15.] The probation office disclosed the initial presentence report on March 13, 2020. "Using a translation program, [counsel] converted the [report] and a letter to Spanish and mailed them to Mr. Bucio later that day." [*Id.* at ¶ 16.] On March 26, during a teleconference with Bucio, counsel "reviewed the [report] in its entirety." Counsel and Bucio "again talked through [their] objection to the loss calculation," and "discussed requesting a mitigating role adjustment." [*Id.* at ¶ 17.] Probation disclosed the final report on July 2, 2020. [*Id.* at ¶ 21.] After both parties filed sentencing memorandums, counsel "prepared and mailed copies" of the material to Bucio and "communicated with his family by phone about the status of the case." [*Id.* at ¶ 23.] During a later teleconference, counsel explained to Bucio "the potential impact of the government's objections, proof requirements at sentencing, possible outcomes, and how best to preserve outstanding issues for appeal." Bucio "confirmed that he understood the issues and agreed with our strategy." [*Id.* at ¶ 24.]

Counsel's thorough affidavit reveals that counsel "provided Mr. Bucio with a Spanish translation of the [report]," and repeatedly explained "the loss calculation and

role adjustment issues." [*Id*. at ¶ 28.]  Bucio's current self-serving accusations are unfounded.

## CONCLUSION

The Court should deny Bucio's motion.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

By:     s/ G. Todd Bradbury
        Assistant United States Attorney
        260 W. Vine Street, Suite 300
        Lexington, Kentucky 40507-1612
        (859) 685-4898
        Gary.T.Bradbury@usdoj.gov

CERTIFICATE OF SERVICE

On February 7, 2022, I electronically filed this response through the ECF system, and I mailed this response to:

Sergio Bucio
Reg. No. 25703-111
USP Lompoc
U.S. Penitentiary
3901 Klein Blvd
Lompoc, California 93436
*Pro Se Defendant*

s/ G. Todd Bradbury
Assistant United States Attorney