UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No. 5: 17-055-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 21-305-DCR |
| | ) | |
| SERGIO BUCIO, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Sergio Bucio has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In relevant part, he alleges that his trial attorney, Jarrod Beck, was ineffective and that his plea was involuntary. [Record No. 551] An evidentiary hearing was held in the matter this date. The motion will be denied because Bucio has not produced any convincing evidence in support of his claims. Instead, his assertions are belied by credible evidence and testimony.

**I.**

Bucio was involved in a scheme to launder money for a Mexican-affiliated drug cartel operating in Kentucky and other locations. The involved parties set up and organized the operation to launder significant amounts of money through bulk cash drops and structured bank deposits. For his part, Bucio participated in one of the drops and taught some of his co-defendants how to structure deposits. He also accompanied several on one trip during which they deposited money in out-of-state banks. Bucio pleaded guilty without the benefit of a plea

agreement to two counts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). [Record No. 497, 527]

The defendant's primary language is Spanish, but he understands a limited amount of English. [Record No. 537, p. 4] Attorney Beck explained during the change-of-plea hearing that he reviewed the charges with Bucio many times. [*Id*. at 5.] Bucio also agreed that he understood the charges that were brought against him and that he was satisfied with the advice given by Beck as of that date. [*Id*. at 6.] Regarding the relevant range to be calculated under the United States Sentencing Guidelines, the Court informed Bucio that he would not be able to withdraw his guilty plea if his attorney's prediction about his sentencing range was incorrect. Bucio affirmed he understood this point. [*Id*. at 9-10.] He also agreed that he was pleading guilty because he was, in fact, guilty. [*Id*. at 17-18.] Bucio was later sentenced to 109 months of imprisonment and a 3-year term of supervised release. [Record No. 527, pp. 2-3]

Thereafter, Bucio appealed his sentence, arguing that this Court overestimated the amount of laundered funds attributable to him and that he was entitled to a mitigating-role reduction. However, the United States Court of Appeals for the Sixth Circuit affirmed the defendant's conviction and sentence. [Record No. 541] Bucio then sought a writ of certiorari from the United States Supreme Court, which was denied on October 12, 2021. [Record No. 549]

Bucio filed the current motion after his petition for a writ of certiorari was denied. He asserts that Beck was ineffective during the plea, pretrial, and sentencing phases of the case. More specifically, he contends that Beck failed to procure an interpreter on one occasion, did not provide him with certain facts about the case, misled him regarding vital information, demonstrated "half-heartedness performance," failed to explain the Presentence Investigation

Report ("PSR") and objections, failed to notify him of plea negotiations or present plea documents to him, failed to adequately consult with him, and promised that he would receive only a five-year sentence. [Record No. 551, p. 4]

Bucio also argues that his guilty plea is "null and void" because it was entered unknowingly, unintelligently, and involuntarily due to Beck's misleading, inaccurate, and deceptive advice. [*Id*. at 8.] He asserts that, if his attorney had properly informed him, investigated facts, and procured an interpreter, he would not have entered a guilty plea and instead proceeded to trial or sought a more favorable plea offer. [*Id*. at 4, 8] Bucio provided a declaration detailing many of the above-listed claims and declaring "[u]nder penalty of perjury under the laws of the United States that the foregoing [is] true and correct." [Record No. 551-1, p. 3] This declaration was executed on November 30, 2021. [*Id*.]

The United States filed a response in opposition to the defendants' motion and provided a sworn affidavit from Beck. [Record No. 556] Beck states in this affidavit he learned Bucio was a native Spanish speaker when he was initially appointed to represent him. He further notes that he contacted "two certified Spanish interpreters who regularly assist with criminal cases in the Eastern District of Kentucky (EDKY), Dr. Marta Roller and Roberto Hernandez." Beck indicates that an interpreter was present and assisted with each of his substantive meetings with Bucio. Beck first met with Bucio in September 2019 to discuss his bond revocation, the nature of his money laundering charges, and the status of the case. He later met with Bucio to review evidence of the defendant's involvement in a cash transfer to an undercover DEA agent, witness statements, and evidence confirming the defendant's involvement in a trip to make structured cash deposits.

Beck explained that he met with Bucio to discuss three separate proposed plea agreements, the government's loss calculation and related relevant conduct, and the proposed Guidelines enhancements. They agreed after each discussion regarding a proposed plea agreement that the terms were not beneficial. Beck states that, during discussions regarding the second proposed plea agreement, they reviewed the benefits and pitfalls of proceeding to trial, agreeing to the government's proposed plea agreement, or entering an open guilty plea to preserve sentencing arguments and appellate rights. [*Id*. at 4.] According to Beck, Bucio decided to enter a guilty plea without the benefit of a plea agreement and directed Beck to object to the loss calculation and any leadership enhancement.

Additionally, Beck met with Bucio, an interpreter (Dr. Roller), and United States Probation Officer Chad Moss for a presentence interview. [*Id*. at 5.] Beck also had the PSR translated into Spanish and participated in a video conference with Bucio and an interpreter to discuss the report. [*Id*. at 6.] He explains that Bucio disagreed with the loss calculation in the PSR, and they further discussed objecting the loss calculation. [*Id*.] Thereafter, Beck objected to the loss calculation on April 14, 2020, and filed a sentencing memorandum on July 7, 2020, which reiterated these objections. Beck spoke with Bucio on July 28, 2020, to discuss proof requirements at sentencing, possible outcomes, and the manner of preserving outstanding issues for appeal.

Beck concludes his affidavit by stating that he procured interpreters for all meetings and conversations where he and Bucio had substantive discussions, he apprised Bucio of the underlying facts and evidence, provided a copy of the PSR translated in Spanish, explained the loss calculation and role adjustment issues, and promptly notified and reviewed all proposed plea offers from the government. [Record No. 556-1, p. 10]

As noted, an evidentiary hearing was held on June 10, 2022 (hereafter, the June 10th hearing) to resolve the conflicts between Bucio's unsworn declaration and Beck's sworn affidavit. Bucio and Beck testified during the June 10th hearing.

Bucio testified that he pleaded guilty because he was "aware of what he did." He then explained that he believed that Beck provided ineffective assistance of counsel because he met with him on only three occasions (two by video conferencing and one in-person). He contended that an interpreter was not present during one of the meetings (the meeting in which the defendant's PSR was discussed). And while the defendant conceded that he received a copy of the PSR in Spanish, he did not understand it. Bucio's testimony during the hearing vacillated between never discussing the PSR with Beck (with an interpreter present) and merely not understanding what was discussed.

On cross-examination, Bucio agreed that he would not have signed a plea agreement containing loss calculations as proposed by the government (i.e., containing an offense level enhancement of between $550.000 and $1,500,000). This was based upon his belief that he should only be held responsible for the money he *actually* laundered (approximately $205,000). He also testified that he only reviewed one plea agreement with Beck. But Bucio conceded that he asked Beck to advocate for a lesser loss amount than the amount proposed by the government and that Beck did argue for a lower loss calculation during the sentencing hearing.

The undersigned questioned Bucio during the June 10th hearing regarding sworn responses he gave during his change-of-plea and sentencing hearings. And while Bucio originally responded that he was "never satisfied" with the advice of his counsel, he later conceded that, at the time of his change-of-plea hearing, he was satisfied with Beck's advice

and the response given during that hearing (i.e., that he was satisfied with his attorney's advice) was accurate. Additionally, Bucio agreed that his statement during the sentencing hearing that he met and discussed the PSR with his counsel to his satisfaction was accurate.

Attorney Beck was called by the United States during the June 10th hearing and refuted Bucio's claims. He explained that, while he could not recall the exact number of his meetings with Bucio, he remembered "a few" in-person meetings and "several" video conferences. Beck noted that the Court's statement (i.e., that CJA and interpreter invoices reflected approximately a dozen meetings involving counsel and the defendant) seemed accurate. Beck testified that an interpreter was utilized to communicate during all substantive meetings with Bucio. If fact, the only time he did not arrange or have an interpreter present during his meetings occurred when he quickly spoke with the defendant at Grayson County Detention Center while there meeting with a party in another case. And on that occasion, nothing of substance was discussed.

It was clear to Beck that Bucio had a limited ability to understand English, so it was important that an interpreter was present during substantive discussions. Beck then explained that he received three plea offers from the United States and he conveyed all to the defendant. Again, he noted that Bucio was unwilling to agree to any of the written plea agreements because he disagreed with the proposed loss calculation that each contained.

Beck further testified that, during his meetings with Bucio, he discussed the proposed plea agreements, relevant conduct, potential sentencing enhancements, the sentencing guidelines, and the benefits and pitfalls of proceeding to trial. Additionally, Beck noted that he thoroughly reviewed all discovery in this matter with Bucio. He explained that Bucio opted

to enter a guilty plea without a plea agreement and directed him to object to the government's proposed loss calculation. At no point did Bucio wish to proceed to trial.

Next, Beck testified that he never promised that Bucio would receive a specific sentence because, in the absence of a binding plea agreement, it is not possible to predict an exact sentence in federal court. Finally, he explained it was not his practice to promise a specific sentence but, instead, to provide a "best case" and a "worst case" scenario while explaining how the sentencing guidelines work. Beck testified that he discussed all possible sentencing outcomes with Bucio.

## II.

A movant must allege "an error of constitutional magnitude, a sentence imposed outside the statutory limits, or an error of fact or law that was so fundamental as to render the entire proceeding invalid" to prevail on a claim under 28 U.S.C. § 2255. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Miller v. United States,* 562 F. App'x 485, 490 (6th Cir. 2014) (citing *Davis v. United States*, 417 U.S. 333, 346 (1974)).

### A. Ineffective Assistance of Counsel

Bucio's overarching claim is that his counsel was ineffective. A defendant's right to effective assistance of counsel is violated when defense counsel's performance falls below an objective standard of reasonableness and the defendant is prejudiced by his attorney's performance. *Henness v. Bagley,* 766 F.3d 550, 554 (6th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[I]n the context of plea negotiations, to demonstrate prejudice, a petitioner must establish a reasonable probability that, but for counsel's

unprofessional errors, the outcome of the plea process would have been different." *Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Bucio argues that Beck was ineffective because he failed to: (1) procure an interpreter, (2) properly investigate the case, (3) provide him the relevant facts and omitted vital case information, (4) explain the PSR and objections, (5) notify him of plea negotiations or present plea documents to him, and (6) adequately consult with him. In addition, he contends that Beck demonstrated "half-heartedness performance"[1] and "indicated that [Bucio's] guilty plea would yield a five year sentence." Bucio argues that, if Beck had not provided ineffective assistance, he would not have entered a guilty plea, and either sought "the most favorable plea offer" or proceeded to trial.

i. Failure to Procure an Interpreter

Bucio's contention that Beck failed to utilize an interpreter at critical stages of this proceeding in not supported by any convincing testimony or other evidence. Instead, this assertion is contradicted by the affidavit provided by counsel, credible testimony presented during the June 10th hearing, and internal vouchers submitted for payment, indicating that an interpreter was utilized to discuss discovery produced by the United States, evaluation of proposed plea agreements, defense strategy, and the defendant's PSR and objections to that document made during the sentencing hearing.

---

[1] Bucio does not provide further details regarding the alleged "half-heartedness" of performance. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim is waived.

There is no constitutional right to a court-appointed interpreter, but if the defendant's primary language is not English, the Court Interpreters Act, 28 U.S.C. § 1827, and, potentially other constitutional rights, require the appointment of an interpreter. *United States v. Girod*, 2019 U.S. Dist. LEXIS 86104 (E.D. Ky. May 22, 2019) (referencing *Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012)). As noted above, Bucio testified during the June 10th hearing that he met with his attorney only three times (in-person and by videoconference) during this case. He testified that an interpreter was only present during two of those meetings. But this assertion is blatantly contradicted by: (i) vouchers from counsel and interpreters; (ii) statements contained in the affidavit submitted by attorney Beck; and (iii) testimony submitted by attorney Beck during the hearing.[2]

The evidence establishes that Beck utilized the services of an interpreter to communicate with Bucio during the change-of-plea hearing. Additionally, he utilized the services of several interpreters as he met with Bucio for substantive discussions. As Beck explained, an interpreter was present during meetings to discuss the nature of the allegations, the evidence against the defendant, as well as multiple plea agreements, proposed loss calculations affecting the sentence, and other sentencing guidelines issues. Further, an interpreter was utilized when Bucio and Beck met with a United States Probation Officer for the defendant's presentence interview. Beck used a translation program to convert the PSR into Spanish and provided it the defendant before meeting with him for further discussions in advance of the sentencing hearing. The defendant's strategy was discussed during that meeting. Internal vouchers submitted to the Court for payment corroborate Beck's testimony

---

[2] Bucio eventually conceded during the evidentiary hearing that he met with Beck on more than three occasions.

regarding the presence of interpreters during these meetings. During the June 10th hearing, Beck testified that an interpreter was likely present for all but one meeting with the defendant and, during the one meeting when an interpreter was not present, nothing substantive was discussed. Finally, an interpreter provided assistance to Beck before, during and after all of Bucio's court appearances. In short, Bucio's central claim that his attorney did not procure an interpreter at critical stages of the case is not credible and contradicted by the great weight of evidence presented to the Court.

ii. <u>Failure to Investigate</u>

Bucio also claims that Beck was ineffective for failing to investigate the total laundered funds amount attributed to him. [Record No. 551-1, p. 2] Counsel has a duty to "make reasonable investigation." *Strickland*, 466 U.S. at 691. But "a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." *United States v. Pratt*, No. 7: 15-10-DCR, 2019 U.S. Dist. LEXIS 34495, at *7 (E.D. Ky. Mar. 4, 2019) (citing *United States v. Hassan*, Nos. 12-cr-20523, 14-cv-11592, 2014 U.S. Dist. LEXIS 150258, at *5 (E.D. Mich. Oct. 21, 2014)).

This claim is also refuted by the evidence and testimony presented. During a meeting on November 14, 2019 (and with an interpreter present), Beck explained the government's loss calculation and the concept of relevant conduct in relation to the loss calculation attributed to Bucio. Based on these discussions, Bucio instructed Beck to object to the loss calculation and argue that his offense level calculation should only reflect one bulk cash transfer and the money deposited in various banks by other defendants while Bucio was present. Thereafter, Beck

filed a sentencing memorandum which included an objection to the loss calculation and further requested a mitigating role adjustment. [Record No. 519]

During the sentencing hearing, the Court received testimony and arguments regarding the parties respective positions. And during the June 10th hearing, Bucio conceded that he asked Beck to advocate for a lower loss amount than the government's proposed calculation and that Beck, in fact, objected to the loss calculation. Based on all evidence submitted and the record of this proceeding (including the transcript of the sentencing hearing), it is clear that Beck investigated and strongly advocated on Bucio's behalf in an effort to reduce the amount of laundered funds attributable to him. There is nothing to indicate that Beck's performance was constitutionally deficient.

Further, Bucio cannot demonstrate prejudice regarding the amount of laundered funds attributable to him. To do so, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Here, Beck repeatedly advocated for reducing the government's loss calculation and objected to the calculation. However, after hearing testimony and arguments from the parties, the Court attributed to Bucio $1,668,000.00 for bulk transfers and $800,000.00 for laundered bank deposits. [Record No. 536, p. 75] The Sixth Circuit affirmed the adjustment of Bucio's Base Offense Level based on the amount of laundered funds properly attributable to him.

    iii. <u>Failure to Provide Facts and Case Information</u>

Bucio alleges that Beck failed to provide facts and omitted important case information during the proceeding before this Court. Specifically, he asserts that Beck failed to explain

the PSR, sentencing guidelines, or any potential objections. In this regard, Bucio claims that he was "unaware of any objections filed challenging the information in the presentence report."

However, during his sentencing hearing, Bucio affirmed that he had the opportunity to review his PSR and that he discussed his PSR with counsel to his satisfaction. [Record No. 536, p. 3; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (explaining that statements made under oath "carry a strong presumption of verity).] Additionally, the Court received testimony during the sentencing hearing on the objections to the PSR, including testimony from an agent and arguments from counsel. [*Id.*]

Beck explained that he discussed with Bucio (again, with the assistance of an interpreter): (i) witness statements; (ii) the cash transfer to an undercover DEA agent; and (iii) other relevant evidence. He also discussed with Bucio sentencing guideline enhancements, including a proposed four-level aggravating role adjustment. Additionally, Beck met with Bucio, an interpreter (Dr. Roller), and USPO Chad Moss for a presentence interview. Beck also converted the PSR into Spanish and participated in a video conference with Bucio (again, with an interpreter present) to discuss the PSR. During that video conference, Bucio disagreed with the loss calculation contained in the PSR and ask that Beck make objections to it. Beck objected to the PSR on April 14, 2020, and reiterated his objections in a sentencing memorandum filed on July 7, 2020. [Record No. 519]

During the June 10th hearing, Bucio's wavered between claiming that he never discussed the PSR with Beck to claiming that he did not understand what they discussed. But he later conceded that he directed Beck to object to the loss calculation and that Beck did, in fact, object to it. Further, Bucio agreed that, at the beginning of sentencing hearing he confirmed that he discussed the PSR with Beck to his satisfaction.

Bucio has not shown that his counsel was deficient in explaining the facts of his case, including the information included in the PSR or potential objections.

v. <u>Failure to Notify of Plea Negotiations or Provide the Plea Document</u>

An attorney must convey all plea offers to his client. *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). Additionally, "[i]f a plea bargain is offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 162-68 (2012). And here, Bucio claims that Beck failed to notify him regarding the status of plea negotiations or present proposed plea documents to him. The evidence does not support Bucio's claim.

Beck discussed the first proposed plea agreement with Bucio on November 14, 2019. However, Beck and Bucio agreed that the terms offered by the United States were not beneficial to the defendant. Beck received a second proposed plea agreement and met with Bucio on December 4, 2019, for further discussions regarding its terms. During this meeting, Beck discussed the second proposed plea agreement, the statement of facts, the loss calculation, and the proposed leadership enhancement. According to Beck, they discussed the benefits and pitfalls or proceeding to trial, agreeing to the government's proposed plea agreement, or entering an open plea to preserve sentencing arguments and appellate rights. And according to Beck, Bucio decided to enter a guilty plea without the benefit of a plea agreement. He further directed Beck to object to the loss calculation and the leadership enhancement. The government offered Bucio a third proposed plea agreement which Beck conveyed to Bucio. However, Bucio again rejected it due to the proposed loss calculation. Bucio affirmed during his plea colloquy that he was pleading guilty without the benefit of a plea agreement.

At a minimum, Bucio conceded during the June 10th hearing that he discussed at least one plea offer presented by the United States with his attorney, contradicting the arguments in his habeas petition. Bucio also explained during the hearing that he would not have agreed to sign a written plea agreement containing the government's proposed loss calculation. Beck testified, consistent with his affidavit, that he conveyed all plea offers to Bucio and discussed the benefits and pitfalls of pleading guilty with or without a written plea agreement or proceeding to trial. Bucio also conveyed to Beck that he did not intend to proceed to trial. As a result, an open plea was his only option. This allowed him to argue that less laundered funds should be attributed to him. It is clear that Beck conveyed all plea offers to Bucio and discussed the consequences of each.

    vi. Failure to Adequately Consult

Bucio argues that Beck failed to adequately consult with him. Other that what has been discussed above, the substance of this claim is not clear. And a defendant must make more than conclusory allegations that counsel's performance was inadequate to support a claim of ineffective assistance of counsel. *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) (citing *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998)). Additionally, Beck's affidavit and testimony establish that he met with Bucio and the assistance of interpreter on multiple occasions. They discussed the benefits of pleading guilty with or without a plea agreement versus going to trial. Beck also reviewed relevant discovery and proposed plea offers as well as relevant parts of the sentencing guidelines calculations, possible loss calculations, and potential sentencing enhancements. [Record No. 556-1, p. 7] No evidence has been presented to support Bucio's claim that Beck was ineffective for failing to adequately consult with him.

    vii. Sentencing Range Statement

"[F]ailure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance." *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003). But "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement." *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990); *see also Bibbs v. United States of America*, No. 1:03-CV-189, 2005 U.S. Dist. LEXIS 35786 (E.D. Tenn. Dec.13, 2005) ("[B]ad advice about the length of a sentence rarely supports a finding of ineffective assistance of counsel."). Bucio contends that Beck was ineffective because he "indicated that [Bucio's] guilty plea would yield a five-year sentence." [Record No. 551, p. 4] However, in his affidavit, Beck states that, "[a]t no point did I indicate that Mr. Bucio's plea would yield a five-year sentence. Instead, I explained Mr. Bucio's options and advised him about possible outcomes. Mr. Bucio entered a guilty plea with no plea agreement to preserve arguments at sentencing and on appeal." [Record No. 556-1, 10] During the June 10th hearing, Beck again affirmed he never promised or inferred that Bucio would receive a specific sentence. Instead, he explained all possible sentencing outcomes.

But even if this evidence is ignored, any pre-plea advice did not prejudice Bucio as shown from his plea colloquy. During the change-of-plea hearing, the undersigned informed Bucio that he would not be allowed to withdraw his guilty plea if his attorney's prediction about his guideline range was incorrect. And Bucio confirmed that he understood this to be the case. [Record No. 537, p. 9] Further, Bucio swore under oath that he was not promised anything in exchange for pleading guilty. [*Id.*] During the June 10th hearing, Bucio agreed that the answers given during the change-of-plea hearing were true.

viii. Prejudice

Even if Bucio could show that his counsel's performance was deficient, he has not established that he was prejudiced with respect to any of his ineffective assistance of counsel claims. When considering prejudice in the context of a guilty plea, the Court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Here, Bucio merely states that he would have sought a more favorable plea offer or proceeded to trial.

Bucio was presented with three plea offers and rejected all of them because he did not agree with the proposed loss calculation the government insisted be included in each agreement. Bucio testified during the June 10th hearing that would not have agreed to a plea agreement from the government with the proposed loss calculation between $550,000.00 and $1,500,000.00. And testimony from Beck establishes that Bucio never intended to proceed to trial. Under these facts, Bucio's claim that he would have sought a more favorable plea offer or proceeded to trial is insufficient to show prejudice. *See Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012) (explaining that the defendant could not show prejudice by "merely telling [the Court] now that she would have gone to trial then if she had gotten different advice".).

**B. Knowing and Voluntary Plea**

A guilty plea is valid if it is knowing, voluntary, and intelligent. *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Here, Bucio contends that his guilty plea is "null and void" because it was unknowing, unintelligent, and involuntary because of his attorney's misleading, inaccurate, deceptive, and omitted set of facts and advice.

Generally, when a defendant "expressly represents in open court that his guilty plea is voluntary he may not ordinarily repudiate his statements thereafter." *United States v. Conley-Logan*, 510 F. App'x 411 (6th Cir. 2013) (cleaned up). As discussed above, Bucio's attorney

did not provide misleading, inaccurate, or deceptive advice. There is no indication that Beck omitted any facts or advice in his conversations with Bucio. Additionally, any potential issues were cured by his Rule 11 plea colloquy. *McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004) (quoting *Ramos v. Rogers*, 170 F.3d 560 (6th Cir. 1999) (explaining that during a plea colloquy, if the Court "scrupulously" follows the required procedures, then the defendant will be bound by the statements he made to the Court); *see also Blackledge*, 431 U.S. at 74; *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004).

During the plea colloquy, the Court asked Bucio several questions to confirm that he was competent to plead guilty. [Record No. 537, pp. 3-5] In response, the defendant: (i) confirmed that he had received a copy of the second superseding indictment and he had reviewed it with his attorney; (ii) agreed that he understood the charges that were brought against him and that he was satisfied with the advice of his attorney; and (iii) confirmed there was no written plea agreement, no promises had been made in exchange for him pleading guilty, and that no threats had been made against him to induce him to plead guilty. [*Id*. at 6-7.]

As noted above, the Court also notified Bucio that he would not be able to withdraw his guilty plea if his attorney's prediction about his guideline range was incorrect. Bucio affirmed that he understood this limitation. The Court then proceeded to review the rights Bucio was waiving by pleading guilty and the government reviewed the charges against the defendant. Bucio confirmed that the Assistant United States Attorney accurately described his conduct in this matter, and he admitted the facts outlined and summarized during the hearing. Bucio also agreed that he was pleading guilty because he was, in fact, guilty. [*Id*. at 17.] Bucio was fully competent and capable of entering an informed plea and that his plea was knowing

and voluntary. [*Id*. at 18.] Accordingly, his argument that his plea was unknowing and involuntary fails.

### III.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). When a § 2255 is denied on the merits, the defendant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Here, no reasonable jurist would find that the defendant's counsel was ineffective. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Bucio's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 551] is **DENIED**.

2. Defendant/Movant Bucio's claims are **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

2. A Certificate of Appealability will not issue.

Dated: June 13, 2022.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky